Pennington, J.
The case is shortly this. In July, 1805, Hopkins executed a bond and warrant of attorney to Wood; about four years afterwards, Hopkins dies; and the fourth or fifth day thereafter, Wood enters up a judgment on this warrant of attorney, and takes out execution against the goods and chattels, and lands of Hopkins. The question is, whether or not this is a legal proceeding ? It is true that our statute, Pat. 356. declares that warrants of attorney to confess judgments, shall not be revocable by the party making them; but this is no more than the course of adjudications had before established. [*] But although a party cannot revoke such warrants of attorney made by himself, yet his death determines the authority; and was this a new question, I should have had no hesitation in saying that the act- of entering up judgment after the death of Hopkins, was a void act. But this question has undergone a judicial *265 investigation, and been determined the other way. It having become a course of the court to enter up judgment on warrants of attorney to confess judgment in vacation, as of the preceding term, it becomes a judgment of that term; and this being while the defendant is living, the judgment is considered as regular. The case of Oades v. Woodward, 1 Ann, reported in 7 Mod. 8 Lord Raym. and other books, established the practice, the same if the defendant dies in term time; a judgment entered up after his death, has relation to the first day of the term; 2 Stra. 888, [509] 1080. 3 P. Wil. 399. Barnes, 870. In Fuller v. Jocelyn, 2 Stra. 882, the court said that the case of Oades v. Woodward, was not to be got over. These cases are authority with us, being all before the revolution; and I think would govern the case under consideration, did not the statute for the distribution of the estates of persons who die, not having sufficient property to pay all their just debts, Pat. 1¡35, press upon my mind a different view of the subject. This statute puts an end to the shameful scramble and frauds formerly practiced by creditors to obtain priority in their demands, by laying down a reasonable rule, that all shall be paid in proportion to their respective dues, excepting out of this rule, physician’s bill during the last sickness, funeral expenses, judgments and mortgages. But as to judgments the statute uses this cautious and explicit language; judgments that have been obtained and entered of record during the life of the defendant. Jfo words could be better adapted to shut out judgments by relation than those here made use of. The judgment in the case under consideration hath not been obtained and [*] entered of record during the life of the intestate. By suffering it to have relation to the preceding-term, and considering it as a judgment of that term, would be (in case of the insolvency of the estate, which is suggested by the administrators) defeating the pro rata rule laid down by the statute, by a mere fiction of the law. It is a well *266 known rule of law, that fictions shall not be permitted to work a wrong or do injustice; nor can a court, in my opinion, with propriety, permit a fiction of law to destroy the operation of a statute, founded on the plainest principles of justice. In the cases in English books, the courts went on the ground that no injury or injustice would result from allowing the fiction of relation to prevail. Under the old law, it was a mere struggle among the creditors, for priority; and the law was indifferent whether A. or B. succeeded. But under our statute, the moment a person dies, his creditors are put on a footing, unless in a few excepted cases,. and obtain vested rights. If these rights can be impaired by fiction and relation, these fictions are permitted to work a wrong and do an injustice, contrary not only to the most' obvious principles of reason, but to a sound maxim of law.
In case the estate of Hopkins is solvent, the plaintiff suffers no other evil from this decision, than the usual delay of collecting debts from executors or administrators; and this he 'has brought on himself by his own neglect in not entering up his judgment in the life time of the intestate. On the other hand, in case of a‘deficiency of assets to pay all the debts, it would not only [510] be a violation of the statute, but against reason and justice, to permit the plaintiff, by a secret instrument, kept four years in his pocket, to crowd out all the other creditors. I am, therefore, of opinion that the judgment and execution ought to be set aside.
By the Court. — Let the judgment and execution in this case, be set aside.[1]
Approved, Milnor v. Milnor, 4 Halst. 93.
Affirmed, Ibid. 693, note.
Distinguished, Evans v. Adams, 3 Gr. 373.
Cited in Reed v. Bainbridge, 1 South. 355; Den v. Hillman, 2 Halst. 189.

 This decision was affirmed in the court of appeals. S. P. Halst. 93.